**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JONATHAN LEMERY,

      Plaintiff-Appellee and Cross-
Appellant,

v.

MARK R. BECKNER; RICHARD
FRENCH, individually and in his
official capacity,

      Defendants-Appellants and
Cross-Appellees,

and

CITY OF BOULDER,

      Defendant and Cross-Appellee.

No. 07-1290 & 07-1327

(D.C. No. 06-CV-2174-REB-BNB)
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, TYMKOVICH,** and **GORSUCH**, Circuit Judges.

---

Plaintiff-Appellee-Cross-Appellant Jonathan Lemery ("Lemery") filed an

action pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants-Appellants-

Cross-Appellees officers Mark Beckner and Richard French and the City of

---

  * This order and judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Boulder ("Defendants").  Lemery alleged violations of his Fourth and Fourteenth Amendment rights.

After the district court granted summary judgment to Defendants on Lemery's Fourth Amendment excessive force claim, and denied summary judgment to Defendants on Lemery's Fourteenth Amendment substantive due process claim, both parties appealed.  We reverse the district court's summary judgment order and remand for further proceedings.

I

The district court set out the facts as follows:

> This case concerns an incident in which the plaintiff, Jonathan Lemery, was hit in the eye by a pepper ball allegedly fired from a pepper ball launcher operated by defendant, Richard French.  At the time of the incident, French was working as an officer on the Boulder Police Department. . . .

> In October, 2004, the City of Boulder gave a permit to a college student to have a block party near the intersection of 10th Street and College Avenue on October 31, 2004.  According to the plaintiff, the Boulder Police Department first was notified of the block party when defendant, Richard French, a Boulder police officer, drove by the area of 10th and College and observed the block party.  French then returned to the Boulder Police Department annex, located at 13th and College.  French and other officers later were called to the block party, and the police department started breaking up house parties in the area, forcing a large number of young adults into the streets of the area.  The police confiscated kegs of beer as part of their efforts to break up the parties, and the crowd in the streets became unruly as this was happening.  The police withdrew from the area and regrouped at 9th and College.

> Sometime later, French was directed by a commander to 'deliver [tear] gas to 10th and College.'  The tear gas was meant to disburse the crowd at 10th and College.  French drove a police Suburban east on

2

College Avenue from 9th toward 10th to deploy the tear gas, and the tear gas was deployed. Five or six other officers were seated in the Suburban, one was riding on the rear, and four were riding on the running boards on either side of the Suburban. French and Officer Scott Morris had pepper ball launchers.

French stopped the Suburban just west of 10th Street on College Avenue. At this point, plaintiff Jonathan Lemery's house was just across College Avenue, north of French's car. Sergeant Seper of the Boulder Police walked up to the window of French's car to discuss the situation with French. Seper directed French and other officers present to drive their vehicles onto 10th Street from College Avenue. French says that when Seper moved away from the window of French's car, French saw people on the sidewalk on the north side of College Ave[.], near Lemery's house. French says he then fired four to eight pepper balls directly across College Avenue toward cars on the north side of College Avenue. French says he intended to have the pepper balls hit the side of the cars, but he noted that the rounds were hitting the street below the cars. French says he then raised the barrel of the pepper ball launcher and then could hear the pepper balls hitting the side of the cars. As he fired these pepper balls, French was holding the pepper ball launcher with one hand and shooting without using the sight on the pepper ball launcher.

Lemery says that after the tear gas was dispersed near his house, 15 to 20 people he did not know ran into his house, attempting to avoid the effects of the tear gas. Lemery then went out the back door of his house, and stood on the back porch for about a minute. He then decided to seek assistance in clearing the strangers from his house. He intended to seek help from police officers he saw on 10th Street, who did not appear to be doing anything. Lemery had noticed three officers standing by French's suburban on 10th Street talking to each other. Lemery began to walk down his driveway, which led to the north side of 10th Street, toward the police Suburban on 10th Street. He was hit in the eye with a pepper ball when he was near the bottom of his driveway.

French says he was firing pepper balls at the time because he had seen people behind cars parked on the north side of College Avenue, and because people were throwing projectiles toward the police on College Avenue from the north side of the street. In addition, French says he wanted to ensure that people did not follow behind French's

3

police car as the car moved forward toward 10th Street.

Lemery argues that the evidence in the record[1] supports a conclusion that French intentionally targeted Lemery when French fired the pepper ball that hit Lemery. Lemery has testified that the police officers standing next to French's police car were 'just kind of nonchalantly kind of hanging out' as Lemery began to approach those officers. If true, this behavior by the police officers indicates that they were not being threatened by projectiles thrown from Lemery's direction, or by people hiding behind cars in Lemery's vicinity.

After an investigation of the incident, including a detailed review of a police video of the incident, the Boulder Police Department reached similar conclusions concerning the circumstances just before and after Lemery was hit with the pepper ball. The department concluded that nobody in the vicinity of French's car was hiding behind cars on the north side of College avenue, or was throwing rocks at the police officers near French's car. The department concluded also that some of the officers standing near to French's car just before Lemery was hit had their backs to the north side of College Avenue and did not exhibit any concern with being hit from a rock from the north side of College Avenue.

French stated at one time that he was targeting people on the north side of College Avenue with pepper balls, aiming to hit them below the waist. Lemery says the relatively short distance between French and Lemery also supports the inference that French targeted Lemery, as opposed to hitting him accidentally.

Joint App. at 144-48 (internal record citations omitted).

Following limited discovery, Defendants filed a motion for summary judgment based on qualified immunity. The district court granted Defendants'

---

[1] Part of this "evidence in the record" is a videotape, which includes audio, of a portion of the incident. The tape shows the officers standing by the patrol vehicle, and Lemery's reaction after being hit. The tape does not show the actual firing of the pepper balls by officer French, and shows Lemery's position only after he is hit by the pepper balls.

4

motion on Lemery's Fourth Amendment excessive force claim, but denied the motion on Lemery's Fourteenth Amendment substantive due process claim. Defendants filed an interlocutory appeal (case no. 07-1290) from the denial of qualified immunity on Lemery's Fourteenth Amendment substantive due process claim. Lemery filed a cross-appeal (case no. 07-1327) contending the district court erred in dismissing his Fourth Amendment excessive force claim.[2]

## II

*Qualified Immunity*

"Once a defense of qualified immunity has been raised, we consider two questions: (1) whether the alleged conduct violated a constitutional right, and if so, (2) whether the law was clearly established at the time of the defendant's actions." Shrum v. City of Coweta, Okla., 449 F.3d 1132, 1138 (10th Cir. 2006). In Pearson v. Callahan, 129 S. Ct. 808, 818 (2009), the Supreme Court held that lower courts are allowed, but not required, to decide the "clearly established" prong without consideration of the first prong.

*District Court Proceedings*

Upon consideration of Defendants' summary judgment motion, the district court found that Lemery had not established that his Fourth Amendment rights

---

[2] Because we reverse the district court's summary judgment order denying qualified immunity due to the legal error in analyzing Lemery's claim, we do not exercise pendent jurisdiction over Lemery's cross-appeal. Lemery's cross-appeal is dismissed for lack of jurisdiction.

were violated based on the conduct alleged, and therefore granted qualified immunity to the individual Defendants. Joint App. at 155. Specifically, the district court concluded there was no Fourth Amendment violation because there was no seizure:

> Lemery was momentarily stopped in his driveway after he was hit. However, a short time after he was hit, he walked back into his house, unimpeded by any police commands or police actions. Even if French did intend to terminate Lemery's freedom of movement by firing the pepper ball, French did not accomplish that goal. Again, Lemery got up and walked away shortly after he was hit with the pepper ball. These undisputed facts do not establish a Fourth Amendment seizure.

Id. at 151.

Regarding Lemery's substantive due process claim, the district court found that there were genuine issues of material fact relevant to the claim, and that, therefore, summary judgment was not appropriate. Id. The district court, in setting out the facts, stated that officer French claims he fired pepper balls at the sides of cars because he saw people in the area throwing projectiles, while Lemery claims officer French intentionally shot in his direction while "nonchalantly hanging out" by the patrol vehicle. Id. at 146-47. The district court concluded there were material factual disputes over the threat posed to officer French and officer French's motive for shooting the pepper balls. Id. at 155. The district court then held that there was "prior law" establishing that Defendants' conduct was clearly prohibited, and therefore denied qualified

6

immunity to the individual Defendants on the Fourteenth Amendment substantive due process claim. Id. at 155-56.

*Appellate Jurisdiction*

In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." The Graham Court explained that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. (emphasis added).

Given the explicit mandate of the Graham Court—that "all" claims of excessive force in seizure cases "must" be analyzed under the Fourth Amendment—the present case's facts should be analyzed under the Fourth Amendment excessive force framework. We have held "[t]he initial seizure [of an individual] is governed by the Fourth Amendment" and that only "at some point after arrest . . . constitutional analysis shifts to the Due Process Clause." Pierce v. Gilchrist, 359 F.3d 1279, 1285-86 (10th Cir. 2004). As a result, we analyze the facts alleged in this case through the lens of the Fourth Amendment.

7

Generally, however, we lack jurisdiction to consider interlocutory appeals. "[B]ecause qualified immunity entitles the defendant to avoid litigation, we have jurisdiction on appeal to review purely legal questions that arise from the denial of qualified immunity." York v. City of Las Cruces, 523 F.3d 1205, 1209 (10th Cir. 2008) (internal quotations and alterations omitted). What constitutes a purely legal question is often a matter of debate.

"[T]he Supreme Court has limited appeals of interlocutory decisions denying the defense of qualified immunity to cases presenting neat abstract issues of law. In contrast, pretrial determinations of evidentiary sufficiency in qualified immunity cases are not immediately appealable." Weise v. Casper, 507 F.3d 1260, 1263-64 (10th Cir. 2007) (internal citations and quotation omitted) ("[E]videntiary sufficiency determinations are not separable from a plaintiff's claim and thus do not constitute final decisions. . . ."). "Our jurisdiction also extends to situations where a defendant claims on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity" based on the "clearly established law" prong of the qualified immunity test. York, 523 F.3d at 1209. We have also stated, however, that "[w]e lack jurisdiction to review a denial of summary judgment based on qualified immunity if the claim on appeal is based on disputed facts." Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1165 (10th Cir. 2005) (citing Johnson v. Jones, 515 U.S. 304, 307 (1995)).

8

This case certainly involves "disputed facts." However, this conclusion need not be the end of our analysis. In <u>Amundsen v. Jones</u>, 533 F.3d 1192, 1196 (10th Cir. 2008) we noted disputed facts were present in the district court, but still exercised our jurisdiction. In <u>Amundsen</u>, the district court denied qualified immunity to a police deputy on the plaintiff's claim of unreasonable search and seizure stemming from the administration of a roadside sobriety test. <u>Id.</u> at 1196. The <u>Amundsen</u> opinion expressly notes that the district court found "several issues of disputed fact" and that the district court concluded that the facts viewed in the light most favorable to the plaintiff could lead a reasonable jury to find that the sobriety test exceeded the scope of the lawful stop. <u>Id.</u>

The <u>Amundsen</u> opinion concluded, however, that appellate jurisdiction was present. The police deputy argued that the plaintiff was driving erratically, and that this alone was sufficient to create reasonable suspicion of intoxication. The plaintiff admitted that she improperly changed lanes. <u>Id.</u> at 1197. The district court also assumed that the plaintiff was weaving across lanes. <u>Id.</u> The <u>Amundsen</u> opinion concluded: "Accordingly, we have jurisdiction to determine if weaving and an improper lane change, standing alone, are sufficient to create a reasonable suspicion of intoxication." <u>Id.</u>

Here, there is no dispute over the facts related to whether Lemery was seized under the Fourth Amendment. Lemery was stopped in his driveway when he was hit by the pepper ball fired by officer French. Officer French

9

acknowledges that he fired the pepper ball. Furthermore, the district court noted that these facts were "undisputed." Joint App. at 154. As a result, we have jurisdiction over this portion of Lemery's case.

*Fourth Amendment Excessive Force*

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. For a Fourth Amendment excessive force claim to succeed, the plaintiff must first show that he was seized. See Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 535 F.3d 1243, 1250 (10th Cir. 2008) ("The first step in our analysis is ordinarily to determine whether there was a seizure under the Fourth Amendment."). A seizure occurs when there is "an intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989); see also Scott v. Harris, 550 U.S. 372, 381 (2007) ("'[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied.'" (quoting Brower, 489 U.S. at 596-97)).

Although we have stated that an assertion of force that does not cause the submission of the person targeted does not constitute a Fourth Amendment seizure, Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994), we also have stated that "when law enforcement officers shoot at a fleeing suspect, a 'seizure' occurs . . . if the shot strikes the fleeing person . . .", id. (relying on California v. Hodari D., 499 U.S. 621, 626-27 (1991)). Here, Lemery was struck in the eye by

10

a pepper ball shot by officer French. Lemery was momentarily stopped before running away. As a result, there was "governmental termination of freedom of movement through means intentionally applied." Brower, 489 U.S. at 596-97.

To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred and that the seizure was "unreasonable." Id. at 599. Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. Graham, 490 U.S. at 395. The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. Id. at 396-97. The Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. Id. at 396.

Because the district court erroneously concluded that Lemery was not seized for purposes of his Fourth Amendment claim, the district court did not reach the question whether Lemery's seizure was unreasonable, or the facts related to that question. Therefore, we reverse the district court's entry of summary judgment, and remand to the district court for further analysis of Lemery's claim under the standards we have set forth herein.

III

11

We REVERSE the district court's summary judgment order and REMAND for further proceedings consistent with order.  Lemery's cross-appeal is dismissed for lack of jurisdiction.

Entered for the Court


Mary Beck Briscoe
Circuit Judge