**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KEITH CLAYTON BROOKS, JR.,

     Plaintiff-Appellant,

v.

STEVE GAENZLE, Individually and in His
Official Capacity as Deputy; PAUL SMITH,
Individually and in His Official Capacity as
Deputy; TERRY MAKETA, Individually and
in His Official Capacity as Sheriff; EL
PASO COUNTY SHERIFF'S
DEPARTMENT; EL PASO COUNTY,

     Defendants-Appellees.

No. 09-1489

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:06-CV-01436-CMA-MJW)**

---

Paul S. Swedlund of Baker Hostetler LLP, Denver, Colorado, for Plaintiff-
Appellant.

Gordon L. Vaughan of Vaughan & DeMuro, Colorado Springs, Colorado, for
Defendants-Appellees.

---

Before **O'BRIEN, BRORBY**, and **GORSUCH**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

Appellant Keith Clayton Brooks, Jr., appeals the district court's grant of

summary judgment in favor of Appellees Steve Gaenzle and Paul Smith –

deputies with the El Paso County, Colorado Sheriff's Department – in his civil

rights actions against them pursuant to 42 U.S.C. § 1983 and his state tort action

pursuant to Colorado Revised Statute § 13-80-119.[1]  The crux of Mr. Brooks's

appeal centers on his argument Deputies Gaenzle and Smith violated his Fourth

Amendment right to be free from unreasonable seizure by use of excessive force

when they shot him after he fled the scene of a violent crime – a burglary

involving a gun used to shoot close range at the deputies when they responded to

a call reporting the burglary.  Mr. Brooks claims the district court erred in ruling

no Fourth Amendment seizure occurred and, even if a seizure occurred, Deputy

Gaenzle acted with objective reasonableness in shooting Mr. Brooks under the

circumstances presented.  He also contests the district court's grant of summary

judgment on his federal action against the deputies for conspiracy and malicious

prosecution and his state tort action against them for assault and battery.  We

exercise jurisdiction under 28 U.S.C. § 1291, affirm the district court's grant of

summary judgment on the federal actions, and decline pendent jurisdiction on the

state action, thereby reversing and remanding it to the district court with

---

[1]  The other named defendants in Mr. Brooks's action included the El Paso County Sheriff's Department, El Paso County Sheriff Terry Maketa, and the El Paso County Board of Commissioners.  The parties later stipulated to dismissal of the claims against them.

instructions to dismiss it without prejudice.


I.  Factual Background

The underlying, undisputed facts surrounding Mr. Brooks's appeal are more fully set forth in the district court's order granting summary judgment in favor of the deputies.[2]  We summarize only the material, undisputed facts considered for our disposition of this appeal.


On October 17, 2005, Mr. Brooks and Nick Acevedo forcibly broke into a garage in El Paso County, Colorado, with the intent of burglarizing the attached house.  Someone in the neighborhood contacted law enforcement, after which Deputies Gaenzle and Smith arrived on the scene.  Both deputies heard what sounded like two or three people talking inside, so they announced their presence and entered the garage, where they saw a white male, later identified as Mr. Acevedo, run into the house and block the door with his body.  As the officers tried to break down the door, someone from inside the house fired a shot which went through the door, barely missing the officers' heads and shoulders and spraying them with shrapnel.  After the deputies left the garage and entered the back yard to ascertain if either of them was injured, they observed a black male

_____

[2]  Like the district court, we rely on the parties' statement of undisputed facts, as amended by Mr. Brooks in his response to the deputies' motion for summary judgment.

flee the house and begin to climb a fence. The fleeing suspect was Mr. Brooks.

Deputy Gaenzle yelled "stop" as Mr. Brooks began to climb the fence.[3] As Mr. Brooks continued to climb the fence, Deputy Gaenzle shot and struck him. Despite being shot, Mr. Brooks continued his flight by climbing over the fence and fleeing the scene. He joined Mr. Acevedo, who had also fled, and together they escaped in a car parked nearby. Three days later, law enforcement authorities found Mr. Brooks in a Colorado Springs, Colorado mall parking lot and, after chasing him to a nearby home, apprehended him. Thirteen days later, police shot and killed Mr. Acevedo during a gun fight in which he died holding the gun used to fire through the door during the burglary with Mr. Brooks.

With respect to the most contentiously disputed facts, Mr. Brooks claimed he never used or possessed a weapon during the burglary. However, both Deputies Gaenzle and Smith stated they saw a gun in his possession as he fled the house. In addition, the deputies claim they did not know whether the shot was fired by the person blocking the door with his body or someone else in the house, while Mr. Brooks contends it was Mr. Acevedo and they should have known it was him. While the parties dispute these facts, they are immaterial to our

_____

[3] Mr. Brooks states he did not hear such a command. Similarly, while the record indicates Mr. Brooks was hit by a bullet in the buttock, he contends it was his lower back area. Neither of these disputed facts is material to our disposition.

disposition on appeal of the issues presented.

Following his arrest, the State of Colorado charged Mr. Brooks with seven counts, including: (1) criminal attempt to commit murder in the first degree, after deliberation, of a police officer; (2) criminal attempt to commit murder in the second degree; (3) assault in the first degree; (4) first degree burglary – assault or menace; (5) first degree burglary – deadly weapon; (6) menacing; and (7) possession of a weapon by a felon. The jury convicted Mr. Brooks of all charges except the count for possession of a weapon by a felon. The jury also found Mr. Brooks did not use or possess a firearm for the purpose of imposing a sentence enhancement.

Thereafter, Mr. Brooks brought the instant civil action against Deputies Gaenzle and Smith. In his second amended complaint, Mr. Brooks raised three claims for damages, including allegations of: (1) a violation of 42 U.S.C. § 1983 based on the deputies' use of excessive force in seizing him by gunshot during the burglary; (2) a violation of 42 U.S.C. § 1983 based on their alleged malicious prosecution and a violation of 42 U.S.C. § 1985 for their alleged conspiracy to make false reports of his possession of a gun;[4] and (3) assault and battery by

_____

[4] Although Mr. Brooks initially raised his conspiracy claim expressly under 42 U.S.C. § 1985, he later proceeded with the claim under § 1983, as discussed hereafter.

Deputy Gaenzle constituting an actionable tort under state law. Thereafter, the district court granted the deputies' motion for summary judgment on each claim. Mr. Brooks now appeals. We recount the district court's resolution of each of Mr. Brooks's claims and the issues the parties raise on appeal as follows in our discussion of those issues.

## II. Discussion

### A. Excessive Force Issue

In his first claim for relief under 42 U.S.C. § 1983, Mr. Brooks asserted Deputies Gaenzle and Smith violated his Fourth Amendment right to be free from unreasonable seizure when they used excessive and deadly force in shooting him as he fled. In ruling on the deputies' motion for summary judgment, the district court held no excessive force occurred based on its determination Mr. Brooks's shooting did not constitute a seizure and its alternative determination the force used was objectively reasonable under the circumstances presented.

In addressing the seizure issue, the district court relied on the Supreme Court's decision in *Brower v. County of Inyo*, 489 U.S. 593, 595-96 (1989), for the proposition a seizure only occurs if the government's actions "restrain the movement of the suspect." It further observed:

For a seizure to occur, the government does not have to literally stop

-6-

the suspect in his tracks or freeze him in place. But, the plain meaning of the word seizure and various Supreme Court interpretations indicate that the government must do something that gives it the opportunity to control the suspect's ability to evade capture or control. *See Brower*, 489 U.S. at 595-96 ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.") .... In other words, the government must have substantially precluded the suspect's ability to loose himself from the government's control.

Apt. App. at 19. It also observed that in *California v. Hodari D.*, 499 U.S. 621, 628-29 (1991), the Supreme Court determined no seizure occurred during the course of a foot chase because the government's "'show of authority' did not produce his stop." Apt. App. at 20. Similarly, it noted in *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994), this court held shooting and striking a helicopter operated by an innocent hostage, but failing to seriously encumber his ability to flee or evade restraint, did not amount to a Fourth Amendment seizure. Applying the holdings of these cases to the instant case, the district court determined no seizure occurred when Deputy Gaenzle shot and struck Mr. Brooks because he managed to continue climbing the fence without the shot "even temporarily halt[ing]" his escape; eluded arrest for three days; and "still had enough spring in his step to evade police in the mall parking lot" before being chased and apprehended at a nearby home. Apt. App. at 21-23.

In making its determination, the district court also considered the cases relied on by Mr. Brooks. It pointed out Mr. Brooks relied on mere dicta in *Bella*

-7-

to assert the shooting of a fleeing suspect automatically or per se constitutes a Fourth Amendment seizure. *See* 24 F.3d at 1255. In addressing the other cases on which Mr. Brooks relied, including *Brower*, *Tennessee v. Garner*, 471 U.S. 1 (1985); *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993); and *Lemery v. Beckner*, 323 F.App'x 644 (10th Cir.) (unpublished opinion), *cert. denied*, 130 S. Ct. 416 (2009), it pointed out the officers' use of deadly force in those cases actually terminated the fleeing suspects' movement, either by killing them or immediately or momentarily subduing them. It reasoned the holding in those cases would likely have been different if the fleeing suspects had, like Mr. Brooks, survived their respective encounters with the police and eluded arrest by escaping from the scene. In contrast, it pointed out the outcome of Mr. Brooks's case would likely have been different if Deputy Gaenzle's shot had hobbled or injured him, thereby preventing him from climbing over the fence and escaping with Mr. Acevedo. While it stated the gunshot "presumably" "pain[ed]" Mr. Brooks or "slowed the pace of his escape," it did not bring him within the government's control. Apt. App. at 23. In holding no seizure occurred, the district court concluded Deputy Gaenzle's gunshot may have injured Mr. Brooks, but it clearly did not produce a stop or terminate his movement.

Alternatively, the district court determined that, even if Mr. Brooks could prove a seizure occurred, the deputies used an objectively reasonable degree of

force under the circumstances presented. In making this determination, it pointed out law enforcement officers may reasonably use deadly force when they have probable cause to believe a suspect has committed a crime involving the infliction or threatened infliction of serious physical harm, and, at the time Deputy Gaenzle shot him, Mr. Brooks was involved in the commission of an inherently violent crime where, during the course of a burglary, someone shot at the deputies at close range before fleeing. The district court held Deputy Gaenzle acted reasonably because a reasonable officer in his position would have, under the circumstances presented, feared for his safety and the safety of others.

In making this determination, the district court rejected Mr. Brooks's claim Deputies Gaenzle and Smith failed to use objectively reasonable force: (1) because the jury acquitted him of the charge of being a felon in possession of a weapon; and (2) based on his allegation he did not possess a weapon or participate in the violent acts for which he was convicted, but merely acted in complicity with Mr. Acevedo. In rejecting these arguments, the district court noted that, regardless of whether Mr. Brooks actually possessed a gun or the fact a jury acquitted him of possession of a weapon, he was undisputably involved in a crime where someone involved in the burglary nearly shot the two deputies in the face and that the law does not require he actually carry the gun or commit the shooting.

In addition, the district court determined Mr. Brooks's reliance on Deputy Gaenzle's statement – that he believed Mr. Brooks possessed a handgun, which was critical to his decision to use deadly force – was merely a subjective standard instead of the requisite objective reasonableness standard in viewing whether a reasonable officer would have used such force under the circumstances presented. Based on this assessment, the district court concluded sufficient undisputed facts existed in the record to support Deputy Gaenzle's use of deadly force, notwithstanding his own subjective impression of the situation. Having made a determination the shooting of Mr. Brooks did not constitute a seizure and, alternatively, the force used was objectively reasonable under the circumstances presented, the district court held Deputies Gaenzle and Smith did not use excessive force in violation of Mr. Brooks's Fourth Amendment right to be free from unreasonable seizure.

On appeal, Mr. Brooks contends the district court erred in its analysis and resolution of his excessive force claim with regard to both its holding no seizure occurred and its alternative holding Deputy Gaenzle used objectively reasonable force under the circumstances presented. In support of his seizure argument, Mr. Brooks relies on the same or similar arguments he made in opposing the deputies' motion for summary judgment, including his reliance on *Hodari, Bella, Cole*, and *Lemery*, and another case, *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003), for the

proposition intentional physical deadly force to restrain a suspect's movement is sufficient per se to constitute a seizure, regardless of whether his movement was "substantially precluded" or "seriously encumbered." In making this argument, Mr. Brooks asserts *Hodari* stands for the proposition the "'application of physical force to restrain movement, even when it is ultimately unsuccessful,' is a seizure." 499 U.S. at 626. He contends this was accomplished when he was struck by the bullet. He concludes that because Deputy Gaenzle applied physical deadly force with the intent of restraining his movement, a seizure occurred, regardless of whether his "attempted apprehension was 'ultimately unsuccessful'" or he still had "spring in his step" days later at the time of his arrest. He alternatively contends his "'pain[ed] or slowed' movement," as referenced by the district court, sufficiently constitutes a seizure, as it restrained his movement.

As to his argument concerning the objective reasonableness of the force applied, Mr. Brooks again relies on Deputy Gaenzle's subjective statement concerning his assessment of the risk he posed, claiming such a subjective assessment may be considered. He also reasserts his claim his mere involvement in the burglary, where a shot was discharged at the deputies, is insufficient to establish he posed a threat to either Deputy Gaenzle or the community at large.

We begin our discussion with our standard of review, as set forth in *Reeves*

*v. Churchich*, 484 F.3d 1244 (10ᵗʰ Cir. 2007):

> We review a grant of summary judgment based on qualified immunity de novo, applying the same legal standard used by the district court.  Summary judgment should be granted if the pleadings ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In conducting our review, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.
>
> In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known.  Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct.

*Id.* at 1250 (internal quotation marks and citations omitted).  In this case,

Deputies Gaenzle and Smith raised the affirmative defense of qualified immunity.

Thus, the "threshold question" is whether "the officer[s'] conduct violated a

constitutional right," when they shot him as he fled.  *Scott v. Harris*, 550 U.S.

372, 377 (2007).

Turning to whether a constitutional right was violated, "[t]he Fourth

Amendment protects individuals against 'unreasonable searches and seizures.'"

*Bella*, 24 F.3d at 1255.  "To state a claim of excessive force under the Fourth

Amendment, a plaintiff must show both that a 'seizure' occurred and that the

seizure was 'unreasonable.'" *Id.* The issue of what constitutes a "seizure" has been repeatedly addressed by the Supreme Court, from which we take instruction.

In *Terry v. Ohio*, the Supreme Court held [a] "seizure" triggering the Fourth Amendment's protections occurs only when the officer has, "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen ...." 392 U.S. 1, 19 n.16 (1968). In *United States v. Mendenhall*, the Supreme Court further explained "a person is 'seized' only when, by means of physical force or a show of authority, *his freedom of movement is restrained*." 446 U.S. 544, 553 (1980) (emphasis added). In *Garner*, the Court applied this principle to a suspect flight situation where a police officer's fatal shooting of a fleeing suspect was deemed to constitute a Fourth Amendment seizure on grounds that "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." 471 U.S. at 7. The *Garner* Court also stated "there can be no question that *apprehension by the use of deadly force* is a seizure subject to the reasonableness requirement of the Fourth Amendment."[5] *Id.* (emphasis added). Thus, from *Terry, Mendenhall*, and *Garner*, one can reasonably conclude a "seizure" requires restraint of one's freedom of movement and includes apprehension or capture by deadly force. However, they do not stand for the

---

[5] "Apprehension" generally means "capture," "arrest," or "seizure in the name of the law." *See Black's Law Dictionary* 97 (7th ed. 1999); *Webster's II New Riverside Univ. Dictionary* 119 (1984 ed.).

proposition, as Mr. Brooks contends, that use of deadly force alone constitutes a seizure. Instead, it is clear restraint of freedom of movement must occur.

Subsequent Supreme Court cases determining what constitutes a "seizure" in flight situations also do not support Mr. Brooks's contention use of deadly force against him is enough alone to constitute a "seizure." In *Brower*, a suspect was killed when the stolen car he was driving at high speeds to elude police crashed into a police roadblock intentionally put in place to stop him. 489 U.S. at 594-95, 598-99. The Supreme Court determined this constituted a seizure, reasoning a seizure occurs if the person is "stopped by the very instrumentality set in motion or put in place" to achieve that result. *Id.* at 599. In making this determination, the Supreme Court instructed:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even where there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental *termination of freedom of movement through means intentionally applied.*

*Id.* at 596-97 (emphasis added). It further explained, a "[v]iolation of the Fourth Amendment requires *an intentional acquisition of physical control.*" *Id.* at 596 (emphasis added). Applying these principles, the Court concluded the complaint sufficiently alleged the police "sought to stop [Mr.] Brower by means of a roadblock *and succeeded in doing so.*" *Id.* at 599 (emphasis added). Applying

-14-

these principles to the instant case, it is clear the gunfire which struck Mr. Brooks was intentional and intended to stop him, but he was not "stopped by the very instrumentality set in motion" for that purpose and, instead, he continued to flee and elude authorities for days.  Under the circumstances, we cannot say authorities gained "intentional acquisition of physical control" over Mr. Brooks. *Id.* at 596.

Similarly, in *Hodari*, the Supreme Court determined a police officer's pursuit of a suspect constituted a show of authority enjoining him to halt, but no seizure occurred until the police officer tackled him because, until then, he did not yield or submit to the officer's show of authority.  499 U.S. at 622-24, 629. In so concluding, the Court noted "[t]he narrow question before us is whether, with respect to a show of authority *as with respect to application of physical force*, a seizure occurs even though the subject does not yield." *Id.* at 626 (emphasis added).  In determining a seizure did not occur until the physical act of tackling the suspect, it observed the common law connotation of the word "seizure" meant not merely to grasp or apply physical force, but to actually bring an object within physical control. *See id.* at 624.  It then discussed the common law definition of "arrest," which it characterized as "the quintessential 'seizure of the person,'" and pointed out common law defined "arrest" as the "application of physical force with lawful authority, whether or not it succeeded in subduing the

arrestee," including "the laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Id.* at 624, 626; *see also Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (pointing out the Supreme Court's discussion on this point constitutes dicta).

This common law dicta is what Mr. Brooks relies on in stating *Hodari* stands for the proposition a seizure occurs per se when there is, as he asserts, an "'application of physical force to restrain movement, even when it is ultimately unsuccessful.'" 499 U.S. at 626. In support, he points out the Eleventh Circuit, in *Vaughan,* relied on *Hodari* for the same proposition. *See* 343 F.3d at 1329 n.5. We further note the Eleventh Circuit applied the same dicta to conclude a bullet striking a suspect constituted a seizure, even though he was not stopped by the bullet but continued to flee by running to his house. *See Carr v. Tatangelo*, 338 F.3d 1259, 1265, 1268 (11th Cir. 2003).

But, in relying on the *Hodari* common law dicta, Mr. Brooks and these cases ignore the *Hodari* Court's further explanation:

> We have consulted the common-law to explain the meaning of seizure .... [and] neither usage nor common-law tradition makes an *attempted* seizure a seizure. The common law may have made an attempted seizure unlawful in certain circumstances; but it made many things unlawful, very few of which were elevated to constitutional proscriptions.

-16-

499 U.S. at 626 n.2. As the Supreme Court later clarified, the holding in *Hodari* centered on the proposition "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment" and its common law discussion merely illustrated the principle "attempted seizures" are beyond the Fourth Amendment's scope. *County of Sacramento v. Lewis*, 523 U.S. 833, 844-45 & n.7 (1998). Moreover, when read in context and its entirety, *Hodari* clarifies that a seizure cannot occur unless a show of authority results in the suspect's submission. *See* 499 U.S. at 629. In addition, as clearly indicated by *Brower* and other Supreme Court precedent reached prior to *Hodari*, some form of intentional acquisition of physical control, through termination of movement by physical force or submission to a show of authority, must occur in flight cases for a seizure to occur. Nothing in the *Hodari* discussion indicates an intent to overrule such precedent. Instead, we have expressly recognized *Hodari* must be reconciled or compared with the holding in *Brower* "that a seizure requires 'intentional acquisition of physical control' and occurs when 'a person [is] stopped by the very instrumentality set in motion or put in place in order to achieve the result.'" *Thomas*, 607 F.3d at 663 (citation omitted).

Following *Hodari* and *Lewis*, the Supreme Court again considered what constitutes a seizure by summarizing, "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when

-17-

the officer, by means of physical force or show of authority, *terminates or restrains his freedom of movement*, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks and citations omitted and emphasis added). As to *Hodari* and *Lewis*, it further clarified, "[a] police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Id.* As to what constitutes actual "submission," the Supreme Court explained it depends on 'the totality of the circumstances – the whole picture," *United States v. Cortez*, 449 U.S. 411, 417 (1981), and, as the *Brendlin* Court offered, "what may amount to submission depends on what a person was doing before the show of authority; a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." 551 U.S. at 262.

Not only have we applied these same principles in considering seizure situations, but none of our holdings suggest the mere use of physical force or show of authority alone, without termination of movement or submission, constitutes a seizure. For instance, in *Reeves*, we determined two individuals were not "seized" for the purpose of a Fourth Amendment violation when law enforcement officers pointed their guns at them and ordered them not to move,

-18-

but they failed to submit to their assertions of authority. *See* 484 F.3d at 1248-50, 1253-54 & n.17. In *Latta v. Keryte*, 118 F.3d 693 (10th Cir. 1997), we held an officer did not seize a suspect during an interstate pursuit, even though he shot out two of the suspect's tires, given it "did not cause [him] to submit to ... authority or succeed in stopping him." *Id.* at 700. Likewise, in *Bella*, we determined a seizure did not occur when a law enforcement officer shot at and struck a helicopter operated by an innocent hostage. 24 F.3d at 1254-56. We concluded that while the shots constituted an intentional assertion of authority, they did not cause the hostage to submit or otherwise succeed in stopping him, and therefore, it did not constitute a seizure within the meaning of the Fourth Amendment. *Id.* at 1255-56. Similarly, in this case, the intentional use of deadly force in shooting Mr. Brooks neither prevented his freedom of movement nor otherwise succeeded in stopping him.[6]

While our holding in *Bella* supports the district court's decision Mr. Brooks was not seized by the gunshot, in that case we generally stated *Hodari* stood for

---

[6] As further illustration, the deputies point out that in our unpublished opinion, *United States v. Quintana-Grijalva*, 332 F.App'x, 487 (10th Cir. 2009), we came to a similar conclusion. In that case, United States Border Patrol agents pursued individuals in a vehicle as they took evasive action. *Id.* at 489. Once the vehicle was stopped by a barbed wire fence, the driver fled on foot fifty yards before his physical apprehension. *Id.* at 490. Relying on the holding in *Hodari*, we held no seizure occurred before he abandoned his vehicle because he did not submit to the agents' show of authority as they pursued him. *Id.* at 492.

the proposition a "'seizure' occurs only when a fleeing person is *physically touched* by police or when he or she submits to a show of authority by police." 24 F.3d at 1255. We also relied on *Hodari* to generally suggest that when law enforcement officers shoot at a fleeing suspect, a "'seizure' occurs only if the shot strikes the fleeing person or if the shot causes the fleeing person to submit to this show of authority." *Id.* It is apparent Mr. Brooks is relying on these general statements when citing to *Bella* and *Cole* to support the position "a police officer effects a seizure the moment his bullet strikes a suspect who is his intended target." Apt. Br. at 11-12. But further explanation of *Hodari*, and our discussion of *Hodari* in *Bella*, is required here.

As previously mentioned, in the portion of *Hodari* on which we relied in *Bella*, the Court was discussing common law seizures and arrests to explain the Fourth Amendment could not be stretched to cover attempted seizures by unsuccessful shows of authority, such as a pursuit. *Hodari*, 499 U.S. at 625-27. In making this point, it stated:

> [Common law] arrest requires either physical force ... or, where that is absent, *submission* to the assertion of authority. Mere words will not constitute an arrest, while, on the other hand, no actual, physical touching is essential. The apparent inconsistency in the two parts of this statement is explained by the fact that an assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest. There can be no arrest without either touching or submission.

*Id.* at 626-27 (internal quotation marks and citation omitted). Thus, as we explained in *Bella*, *Hodari* indicates no seizure can occur unless there is physical touch or a show of authority. But, as other Supreme Court precedent further instructs, such physical touch (or force) must terminate the suspect's movement, and, alternatively, any show of authority (without touch) must cause submission. Nothing in our reading of the statements in *Hodari* or *Bella* or their holdings causes us to believe that in flight situations mere intentional physical touch constitutes a seizure, absent termination of the suspect's movement.[7] As the district court in the instant case stated, "the plain meaning of the word seizure and various Supreme Court interpretations indicate that the government must do something that gives it the opportunity to control the suspect's ability to evade capture or control." Apt. App. at 19. Unfortunately but understandably, *Hodari* and our general discussion in *Bella* have been incorrectly interpreted by Mr. Brooks to mean his shooting alone constitutes a seizure, without consideration of the fact he continued to flee without the deputies' acquisition of physical control,

---

[7] Deputies Gaenzle and Smith suggest using mere "physical touch" to constitute a seizure in flight situations could cause illogical results. To illustrate this point, they assert that if a police officer throws a hand grenade intending to stop a suspect and misses, causing the suspect to continue to flee, no seizure would occur because the officer's show of authority did not cause his submission. In contrast, they point out that if the same police officer throws a snowball and hits the same suspect without stopping him as he flees, a seizure would occur because he was "physically touched." In turn, Mr. Brooks argues a seizure occurs merely from physical touch by a snowball, or even a feather. However, under the *Brower* analysis, neither a touch by a feather nor a snowball would constitute a seizure unless intentional acquisition of control over the suspect occurred.

-21-

as demonstrated by the fact he remained at large for days.

As to the other cases on which Mr. Brooks relies, the district court aptly noted his successful eluding of the police is different than what occurred in *Brower*, *Garner*, or *Cole,* where the officers' use of deadly force actually terminated the fleeing suspects' movement, either by killing them or immediately stopping them. *See Brower*, 489 U.S. at 594, 599; *Garner*, 471 U.S. at 3-4, 7; *Cole*, 993 F.2d at 1330, 1332-33. Similarly, in *Hodari*, no seizure occurred until the suspect was tackled and thereby stopped. *See* 499 U.S. at 629. In *Vaughan*, on which Mr. Brooks also relies, a passenger was struck by a bullet fired by police in an attempt to stop him and the driver in a speeding vehicle. 343 F.3d at 1326-27. After the passenger was struck, the driver of the vehicle continued evasive action before losing control and crashing. *Id.* at 1327. The court determined the persons to be stopped in the vehicle were "stopped by the very instrumentality set in motion ... to achieve that result," when an officer fired his weapon to stop the passenger and driver, and one of those bullets struck the passenger. *Id.* at 1329. But, unlike *Vaughan*, a significant difference exists here because the instrumentality meant to stop Mr. Brooks – the bullet from Deputy Gaenzle's gun – did not stop him, and therefore, the intended result was not achieved.

We are not alone in interpreting Supreme Court precedent as requiring intentional termination of movement or acquisition of physical control in flight situations, regardless of the force applied. *See, e.g., United States v. Bradley*, 196 F.3d 762, 768 (7th Cir. 1999) (holding "there must be either a show of authority or a use of force" which "must have caused the fleeing individual to stop attempting escape"); *United States v. Hernandez*, 27 F.3d 1403, 1405, 1406-07 (9th Cir. 1994) (determining no seizure occurred when officer grabbed suspect, a struggle ensued, and suspect fled, as he "was not seized because he never submitted to authority, nor was he physically subdued" and further holding "[a] seizure does not occur if an officer applies physical force in an attempt to detain a suspect but such force is ineffective"); *Cameron v. City of Pontiac*, 813 F.2d 782, 785 (6th Cir. 1987) (holding "[t]he use of deadly force standing alone does not constitute a seizure, and absent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action").

Applying these legal principles concerning flight-type seizures to the instant case, we agree with the district court's assessment Deputy Gaenzle's gunshot may have intentionally struck Mr. Brooks but it clearly did not terminate his movement or otherwise cause the government to have physical control over him. This is evidenced by the fact he continued climbing the fence and eluding

-23-

arrest for three days, after which, as the district court aptly noted, he "still had enough spring in his step to evade police in the mall parking lot" and cause them to chase him to a nearby house. Apt. App. at 23.

As an alternative argument, Mr. Brooks relies on the district court's pronouncement the gunshot "presumably" "pain[ed]" him or "slowed the pace of his escape" to assert, seemingly for the first time on appeal, his "'pain[ed] or slowed' movement" sufficiently constitutes a seizure.[8] The only case he cites which can be construed to remotely support such a proposition is *Lemery*, an unpublished opinion where we relied on the aforementioned statements in *Hodari* and *Bella* to hold the "momentary" stopping of an individual, with a pepper ball shot to the eye before he walked away unpursued by police, constituted a "'governmental termination of freedom of movement through means intentionally applied.'" *See Lemery*, 323 F.App'x at 649. But in that case, as well as in *United States v. Morgan*,[9] we dealt with momentary termination of the suspect's

_____

[8] In his appeal brief, Mr. Brooks states the deputies saw him "hobbling" and "limping" through the neighborhood, but provides no record citation to support his statement. Even assuming his statement is true and construing it in the light most favorable to Mr. Brooks as the nonmoving party, it does not demonstrate he terminated his flight, even momentarily, but merely that the bullet slowed his pace, as suggested by the district court.

[9] In *Morgan*, we determined a person's momentary yielding to an officer's apparent show of authority before fleeing was relevant to our seizure determination. *See* 936 F.2d 1561, 1567 (10th Cir. 1991). But, in making our seizure determination, we also relied on the fact the suspect was in a car followed

-24-

movement, and not pained or slowed movement, as argued here, and Mr. Brooks

provides no other citation to authority which supports his contention pained or

slowed movement is sufficient to constitute a seizure.

We generally will not address issues not supported by citation to legal

authority. *See MacArthur v. San Juan County*, 495 F.3d 1157, 1160-61 (10th Cir.

2007). In addition, "[w]e have repeatedly declined to allow parties to assert for

the first time on appeal legal theories not raised before the district court, even

when they fall under the same general rubric as an argument presented to the

---

for several blocks by a police car with its overhead lights activated before it
pulled over and he exited and verbally responded to the officers' show of
authority before fleeing on foot. *Id.* at 1565-67. Moreover, it does not appear, as
here, the suspect in *Morgan* continued to elude police for days before his
apprehension.

While we indicated in *Morgan* that momentary yielding to a show of
authority may be relevant to a seizure determination, we recognize other circuits
have held momentary termination of movement does not constitute a seizure. *See
United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007) (holding to constitute
a seizure "a suspect must do more than halt temporarily; he must submit to police
authority"); *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000) (stating
"[e]ven if [suspect] paused for a few moments and gave his name, he did not
submit ... to the officers' show of authority" until grabbed); *United States v.
Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994) (determining defendant, who
briefly stopped and then sped off before officer approached his vehicle, did not
submit for purpose of constituting a seizure); *Hernandez*, 27 F.3d at 1407
(declining "to adopt a rule whereby momentary hesitation and direct eye contact
prior to flight constitute submission to a show of authority" and concluding that
"[s]uch a rule would encourage suspects to flee after the slightest contact with an
officer in order to discard evidence, and yet still maintain Fourth Amendment
protections").

district court." *United States v. A.B.*, 529 F.3d 1275, 1279 n.4 (10ᵗʰ Cir. 2008). As a result, we need not further address Mr. Brooks's argument that pained or slowed movement is sufficient to constitute a seizure.

As to his reliance on *Lemery*, even if we applied its non-precedential holding that a suspect's momentary termination of movement alone, caused by a pepper ball shot, constitutes a seizure, neither the record on appeal nor Mr. Brooks's arguments indicate Deputy Gaenzle's bullet momentarily stopped his escape and, instead, as the district court stated, it did not "even temporarily halt[]" it. Apt. App. at 21-22. For these reasons, we agree with the district court's assessment no genuine issue exists as to any material fact, and Deputies Gaenzle and Smith, as the moving parties, are entitled to judgment as a matter of law. Because Mr. Brooks has not demonstrated their alleged conduct violated a constitutional right by means of "seizure," we need not consider the issue of whether the deputies' conduct was objectively reasonable, which is also required for a Fourth Amendment excessive force claim.

B. Malicious Prosecution and Conspiracy/False Statements

1. Malicious Prosecution

In his second federal claim against Deputies Gaenzle and Smith, Mr. Brooks sought relief, in part, under 42 U.S.C. § 1983 for their alleged violation of

his Fourteenth Amendment due process rights by making false reports of his possession of a gun in order to maliciously prosecute him by charging him with possession of a weapon and seeking a sentence enhancement based on his possession or use of a weapon. In opposing the deputies' motion for summary judgment, Mr. Brooks argued a factual issue existed with respect to whether they made false statements about his possession of a gun as he fled.

The district court agreed a factual dispute existed as to whether the deputies made false statements but determined that such a factual dispute was immaterial to the malicious prosecution issue because, regardless of their statements, probable cause still existed for the purpose of trying Mr. Brooks on the weapon charge and seeking the sentence enhancement. In making this determination, the district court pointed out multiple reports by investigators other than Deputies Gaenzle and Smith supported both the charge and enhancement.[10] Thus, the

---

[10] These reports included: (1) Detective G. Cliff Porter's report on Mr. Brooks's admission to carrying a 9mm pistol on the day of the burglary, even though he later recanted his admission; (2) Detective Ralph Losasso's report on his interview with Amanda Hall during which she stated she saw Mr. Brooks sitting in the back of a car with a rifle in his hands on the day of the burglary and that he later told her he shot at police as he and Mr. Acevedo attempted to flee the scene; (3) Detective Rick Frady's report corroborating Detective Losasso's report about Ms. Hall's interview; (4) Detective Michael Simler's report on his interview of Daniel Mileto, who acted as an accomplice to the burglary after the fact, during which he stated Mr. Brooks admitted to firing on police during the burglary; (5) other district attorney investigative reports containing numerous statements by these and other witnesses that Mr. Brooks admitted to shooting at the officers during the burglary; and (6) an affidavit by the assistant district

district court concluded that if the deputies' alleged false statements were removed from the analysis, sufficient additional evidence existed for probable cause to charge Mr. Brooks with possession of a gun by a felon and seek a sentence enhancement.

On appeal, Mr. Brooks renews his arguments in support of his malicious prosecution claim, stating the deputies' false statements tainted the entire investigative and probable cause process. The deputies argue in support of the district court's grant of summary judgment and point out Mr. Brooks's public defender conceded in his deposition that sufficient information existed to establish probable cause of weapon possession, even absent the deputies' statements.[11]

As the district court held, to support his malicious prosecution claim Mr. Brooks must show that, absent the deputies' alleged misrepresented statements,

attorney stating the decision to bring a weapon charge and seek a sentence enhancement was based on multiple sources of information, so the deputies' statements as to Mr. Brooks's possession of a weapon were immaterial to that decision.

[11] Deputies Gaenzle and Smith alternatively point out that while this circuit has addressed malicious prosecution as a constitutional tort, the Supreme Court has not expressly recognized such a constitutional tort, and therefore, it seeks to preserve such an issue for future appeal. However, we need not address their alternative malicious prosecution argument given our affirmation of the district court's grant of summary judgment in favor of Deputies Gaenzle and Smith.

the government lacked probable cause to charge him with weapon possession or to seek a weapon sentence enhancement. *See Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006) (holding "[i]f hypothetically correcting the misrepresentation or omission would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983"). In this case, even if the deputies had not reported Mr. Brooks's possession of a gun, it is clear an investigation would have been conducted concerning whether either suspect possessed a gun for the purpose of ascertaining and/or confirming who shot at the deputies through the door. Considering the various investigative reports and affidavits relied on by the district court, we agree in this case sufficient additional evidence supported charging Mr. Brooks with possession of a weapon by a felon and seeking a weapon sentence enhancement against him, regardless of whether Deputies Gaenzle and Smith made false statements on his possession of a weapon. In other words, even absent the deputies' statements he possessed a gun, sufficient other investigative evidence supported bringing such a charge and seeking an enhancement.

## 2. Conspiracy

As to the conspiracy claim alleged in his second federal action, Mr. Brooks alleged in his amended complaint Deputies Gaenzle and Smith "conspired to make false reports and statements in the official proceedings investigating

[Deputy] Gaenzle's shooting of [him] *in violation of 42 U.S.C. § 1985.*" Apt. App. at 10 (emphasis added). However, in responding to their motion for summary judgment, he abandoned his § 1985 conspiracy action, stating "[i]nsofar as [Mr.] Brooks alleges conspiracy under § 1985(2), that claim may be dismissed. Mr. Brooks' *§ 1983 conspiracy claim* is adequately supported by the record to withstand summary judgment." *Id*. at 243. In support, he asserted his expert witness found inconsistencies in the deputies' statements which established a conspiracy and provided the district court the affidavit of that witness, which stated in relevant part:

> The inconsistencies which exist in [Deputies Gaenzle's and Smith's] reports are of a quantity and nature that arouse suspicion concerning the veracity of [their] report that [Mr.] Brooks was armed when shot by Deputy Gaenzle. [Deputies] Gaenzle's and Smith's report of a gun is inconsistent with their conduct and the known undisputed facts of the case.

*Id*. at 176-77. Other than this, the record on appeal only includes a portion of the deposition transcript of the same expert, who stated inconsistencies and discrepancies existed in the deputies' reports which raised "flags," but only discussed with any specificity one inconsistency concerning Deputy Gaenzle's first statement they found a black male in the garage, as compared to his subsequent and repeated statements it was a white male. Relying on this and the expert witness's affidavit, Mr. Brooks surmised that "inconsistencies in [Deputies] Gaenzle's and Smith's accounts are 'red flags' that they have

conspired to 'whitewash' the truth." *Id*. at 243.

In addressing Mr. Brooks's conspiracy argument, the district court acknowledged an issue existed as to whether he failed to properly plead conspiracy under § 1983 but determined that, regardless of that issue, he failed to raise a triable issue of fact on the necessary elements of his conspiracy claim, including allegations of a shared conspiratorial objective, concerted action, and an actual deprivation of rights. In so holding, it also noted his claim was based on the affidavit of his expert in which the expert merely stated that inconsistencies existed within the deputies' reports. The district court held Mr. Brooks's vague claim on the existence of such inconsistencies did not raise a triable issue of fact they participated in a conspiracy to falsely claim he possessed a gun, including the required elements that they had a "shared objective" or acted in "concert[]." *Id.* at 38.

On appeal, Mr. Brooks continues to suggest material inconsistencies exist, including the fact each deputy reacted differently to the threat he allegedly posed, as demonstrated by Deputy Gaenzle's drawing his gun and shooting, while Deputy Smith did not.[12] He also contends he sufficiently pled conspiracy under

---

[12] Other perceived inconsistencies he points to include: (1) the fact the deputies initially omitted the fact the fleeing suspect was black and the one in the garage was white; (2) their statements they did not know who shot them, even

§ 1983 when the entirety of his complaint and its allegations are read together.

In *Dixon v. City of Lawton*, we explained many differences exist between § 1983 and § 1985 for the purpose of alleging an actionable conspiracy. *See* 898 F.2d 1443, 1447, 1449 & n.6 (10th Cir. 1990). For instance, § 1983 applies to defendants acting under color of state law, while § 1985 applies to "private conspiracies driven by some racial or otherwise class-based discriminatory animus." *Id.* at 1447 (internal quotation marks and citation omitted). However, despite these and other differences in pleading actions under § 1983 and § 1985, we have generally held a federal conspiracy action brought under either of these statutes requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective. *See Salehpoor v. Shahinpoor*, 358 F.3d 782, 785, 789 (10th Cir. 2004) (regarding § 1985 action ); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1229, 1231 (10th Cir. 1990) (regarding § 1985 action); *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990) (regarding § 1983 action). In addition, while we have said allegations of a conspiracy may form the basis of a § 1983 claim, we have also held "a plaintiff must allege specific facts showing an

though they knew the white male was blocking the door; and (3) their statements they did not continue to pursue Mr. Brooks because they did not see another party exit the house, even though Deputy Smith later stated he saw a white male flee behind Mr. Brooks.

agreement and concerted action amongst the defendants" because "'[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'" *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)).

In this case, regardless of whether Mr. Brooks properly alleged a violation under § 1983, rather than § 1985, we agree with the district court that his vague claim in his complaint of an alleged conspiracy does not raise a triable issue of fact the deputies participated in a conspiracy. Moreover, his later assertion his expert found inconsistencies in the deputies' statements as to his possession of a gun, without expressly outlining those inconsistencies or why they are material in establishing a conspiracy, does not cure his failure to raise a triable issue of fact they participated in a conspiracy. In addition, his discussion on appeal of other perceived inconsistencies, including the deputies' different reactions during the heat of the moment in which only one raised and shot his gun, also does not cure his failure to raise a triable issue of fact the deputies participated in a conspiracy by acting in concert or with a general conspiratorial objective. As we previously stated in another civil rights action, an allegation of "[p]arallel action – or inaction ... – does not necessarily indicate an agreement to act in concert." *Salehpoor*, 358 F.3d at 789. For these reasons, we affirm the district court's grant of summary judgment on Mr. Brooks's federal action for malicious prosecution

and conspiracy.

### C.  Assault and Battery

In support of his state tort claim for relief against Deputy Gaenzle for assault and battery, Mr. Brooks simply stated Deputy Gaenzle "assaulted and battered" him and he suffered damages.  In granting summary judgment to Deputy Gaenzle on Mr. Brooks's assault and battery claim, the district court recounted Colorado Revised Statute § 13-80-119, which states:

> (1) *No person ... shall have a right to recover damages sustained during the commission of or during immediate flight from an act that is defined by any law of this state or the United States to be a felony*, if the conditions stipulated in this section apply.

> (2)(a) The court shall dismiss the action for damages and award attorney fees and costs to the person against whom the action was brought if the person bringing the action ... has been convicted of the felony or has been adjudicated a delinquent as a result of the commission of the act, *unless the damage was caused by the willful and deliberate act of another person*; *except that such exception shall not apply if the person who caused the injuries acted*:

> (I) *Under a reasonable belief that physical force was reasonable and appropriate to prevent injury to himself or herself or to others, using a degree of force that he or she reasonably believed necessary for that purpose*; or

> (II) *Under a reasonable belief that physical force was reasonable and appropriate to prevent the commission of a felony, using a degree of force that he or she reasonably believed necessary for that purpose*; or

> (III) As a peace officer, as such person is described in [§] 16-2.5-101, C.R.S., acting within the scope of the officer's employment

and acting pursuant to [§] 18-1-707, C.R.S.

Colo. Rev. Stat. § 13-80-119 (emphasis added).

To the extent Deputy Gaenzle was acting in his employ as a peace officer under subsection (2)(a)(III), Colorado Revised Statute § 18-1-707, as referenced above, states in part:

(1) Except as provided in subsection (2) of this section, a peace officer is justified in *using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary*:

(a) To effect an arrest or to prevent the escape from custody of an arrested person unless he knows that the arrest is unauthorized; or

(b) To defend himself or a third person *from what he reasonably believes to be the use or imminent use of physical force* while effecting or attempting to effect such an arrest or while preventing or attempting to prevent such an escape;

(2) A peace officer is justified in using deadly physical force upon another person for a purpose specified in subsection (1) of this section *only when he reasonably believes that it is necessary*;

(a) To defend himself or a third person *from what he reasonably believes to be the use or imminent use of deadly physical force*; or

(b) To effect an arrest, or to prevent the escape from custody, of a person *whom he reasonably believes*:

(I) Has committed or attempted to commit a felony involving the use or threatened use of a deadly weapon; or

(II) Is attempting to escape by the use of a deadly weapon; ....

Colo. Rev. Stat. § 18-1-707 (emphasis added).

In applying these statutes to the instant action for assault and battery, the district court summarily concluded Mr. Brooks could not recover damages for any injury he sustained because, as prohibited from recovery under § 13-80-119(1) and 2(a), he committed multiple felonies for which the jury convicted him and, even if the willful and deliberate exception in subsection 2(a) applied, Deputy Gaenzle used a "reasonable degree of force" when he shot him.

On appeal, Mr. Brooks continues to claim Deputy Gaenzle's shooting him constitutes a compensable tort of assault and battery under Colorado Revised Statute § 13-80-119 because the force used on him as a fleeing felon was unreasonable. He also suggests Deputy Gaenzle's affirmative response to a hypothetical question – that his shooting of Mr. Brooks constituted excessive force if he was not armed – creates a factual dispute concerning the *subjective* reasonableness of his shooting sufficient to preclude summary judgment on his assault and battery claim. The deputies argue in support of the district court's grant of summary judgment, stating Deputy Gaenzle acted with *objective* reasonableness in shooting Mr. Brooks.

While the district court granted summary judgment to the deputies on Mr. Brooks's state tort claim, we have ruled pendent jurisdiction over state claims "is exercised on a discretionary basis" and generally held that "[i]f federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" *Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), and *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). We generally decline to exercise pendent jurisdiction in such instances because "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (internal quotation marks and citation omitted). Similarly, Colorado law recognizes "if a plaintiff asserts all of his or her claims, including state law claims, in federal court, and the federal court declines to exercise supplemental jurisdiction [over the state claims], the plaintiff may refile those claims in state court." *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (relying on 28 U.S.C. § 1367(d), which pertains to supplemental jurisdiction and states the period of limitation for a state claim is tolled while claim is pending in federal court and for thirty days after it is dismissed unless state law provides for a longer tolling period).

Having affirmed the district court's dismissal of the federal issues, only the supplemental or pendent state tort issue of assault and battery is left. We believe this issue is best left for a state court's determination, including whether Colorado Revised Statute § 13-80-119 and/or § 18-1-707, as applied specifically to peace officers, require either objective or subjective reasonable force, as disputed by the parties. Accordingly, we decline to exercise jurisdiction over Mr. Brooks's remaining state law claim, and, instead, reverse the district court's grant of summary judgment on that claim and remand with instructions to dismiss it without prejudice. *See Bauchman*, 132 F.3d at 549-50; *Ball*, 54 F.3d at 669.

## III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Deputies Gaenzle and Smith on Mr. Brooks's federal actions for excessive force and conspiracy and malicious prosecution. We **REVERSE** the district court's grant of summary judgment to the deputies on the remaining state law claim of assault and battery and **REMAND** that claim to the district court with instructions to dismiss it without prejudice.