FILED
United States Court of Appeals
Tenth Circuit

November 4, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

THE ESTATE OF STEVEN WAYNE
BLECK, by Joanna Churchill,
Personal Representative for Steven
Bleck, deceased,[*]

　　　　Plaintiff-Appellant,

v.

CITY OF ALAMOSA, COLORADO;
and JEFF MARTINEZ, individually
and in his official capacity as a Law
Enforcement Officer of the Alamosa
Police Department,

　　　　Defendants-Appellees.

No. 12-1139
(D.C. No. 1:10-CV-03177-REB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[**]

---

[*]　　　While this appeal has been pending, Mr. Bleck died. Consistent with Federal Rule of Appellate Procedure 43(a)(1), the personal representative for Mr. Bleck's estate, Joanna Churchill, filed a motion seeking to be substituted as the Appellant in Mr. Bleck's stead. We hereby **grant** this motion. In the interest of simplicity, however, we continue to refer to the proponent of Appellant's cause as Mr. Bleck. In connection with Ms. Churchill's motion, the parties joust about whether Mr. Bleck's death constricts or otherwise affects the scope of relief available in this litigation to Ms. Churchill, acting on behalf of Mr. Bleck's estate. We do not reach those matters here and properly leave them for the district court to resolve in the first instance.

[**]　　　This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

Before **KELLY**, **MCKAY**, and **HOLMES**, Circuit Judges.

Plaintiff-Appellant Steve W. Bleck filed an action pursuant to 42 U.S.C. § 1983 in the District of Colorado against Defendants-Appellees City of Alamosa, Colorado ("Alamosa") and Officer Jeff Martinez (collectively "Defendants"), alleging claims for municipal liability based on inadequate training and failure to supervise, and use of excessive force in violation of the Fourth Amendment. The district court granted summary judgment in favor of Defendants. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm in part** and **reverse in part** and **remand** the case for further proceedings.

**I**

On August 6, 2010, Colorado State Patrol Dispatch received a 911 call from a mental-health counselor, who indicated that he had received a distressing call from Mr. Bleck. The counselor said that Mr. Bleck, a Vietnam War veteran, was re-experiencing trauma and was intoxicated, suicidal, and possibly armed. Officers of the Alamosa Police Department were dispatched to the local hotel where Mr. Bleck was reportedly staying.

Officer Martinez entered the room first; he had his duty weapon drawn. Mr. Bleck was sitting on the bed facing away from the door, and Officer Martinez could not see Mr. Bleck's hands. The officers announced that they were the police and commanded Mr. Bleck to show his hands and to lie down on the floor.

Mr. Bleck failed to comply, and may have attempted to stand instead. Still holding his gun in his right hand, Officer Martinez attempted to push Mr. Bleck back down onto the bed by reaching around Mr. Bleck's right side with his free (i.e., left) hand, a procedure referred to here as going "hands on." Officer Martinez's weapon discharged while he was going hands on, shooting Mr. Bleck in the hip.

Mr. Bleck filed a lawsuit alleging three claims: (1) a Fourth Amendment claim of excessive force against Officer Martinez, pursuant to § 1983; (2) a claim against Alamosa for inadequate training/supervision with regard to use of force in situations involving mentally ill individuals, pursuant to § 1983; and (3) a state-law claim for battery against Officer Martinez.[1] Defendants filed a motion for summary judgment. In turn, Mr. Bleck filed a motion for summary judgment on his first and second claims.

The district court concluded that the circumstances of this case did not constitute a seizure within the meaning of the Fourth Amendment, and dismissed with prejudice the excessive-force claim against Officer Martinez. The court then dismissed with prejudice the inadequate-training claim against Alamosa because it found no predicate constitutional violation on the part of Officer Martinez to

---

[1] In addition, Mr. Bleck alleged an inadequate-training/failure-to-supervise claim against former Alamosa Chief of Police John Jackson and unconstitutional policy on the part of Alamosa. In the district court, Mr. Bleck abandoned both of these claims.

support municipal liability.  The district court declined to continue exercising supplemental jurisdiction over Mr. Bleck's pendent state-law claim, and therefore dismissed that claim without prejudice.  Mr. Bleck timely appealed.

**II**

We review the district court's grant of summary judgment de novo, employing the same legal standard as the district court.  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  "The question . . . is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Adler*, 144 F.3d at 670.

Our review of summary-judgment orders in the qualified-immunity context differs from that applicable to our review of other summary-judgment decisions.  *Martinez*, 563 F.3d at 1088.  "When a defendant asserts qualified immunity at

summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  *Id.*; *see Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  Ultimately, however, "[q]ualified immunity is applicable *unless* the official's conduct violated a clearly established constitutional right."  *Id.* at 232 (emphasis added); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In determining whether the plaintiff has met his burden of demonstrating a violation of a constitutional right that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007); *see Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("The plaintiff must demonstrate *on the facts alleged* both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." (emphasis added)).  "However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's verison of the facts must find support in the record."  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009); *accord Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011), *cert. denied*, --- U.S. ----, 133 S. Ct. 211 (2012).  More specifically, "[a]s with

any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (second and third alterations in original) (quoting *Scott*, 550 U.S. at 380).

**III**

**A**

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV; *see Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994). "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Bella*, 24 F.3d at 1255 (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)); *see Graham v. Connor*, 490 U.S. 386, 395–97 (1989); *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010).

The issue of what constitutes a "seizure" has been repeatedly addressed by the Supreme Court. *See Brooks*, 614 F.3d at 1219. A "seizure" triggering Fourth Amendment protection occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen[.]" *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *see Graham*, 490 U.S. at 395 n.10. In other words, "a person is 'seized' only when, by means of

-6-

physical force or a show of authority, his freedom of movement is restrained."

*United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

In the Supreme Court's decision in *Brower*, petitioners' decedent was killed when the stolen car that he had been driving at a high rate of speed in an effort to elude pursuing police crashed into a police roadblock. 489 U.S. at 594. His heirs brought a § 1983 action alleging that the respondents had used "brutal, excessive, unreasonable and unnecessary physical force" in establishing the roadblock, and thereby effected an unreasonable seizure in violation of the Fourth Amendment. *Id.* In concluding that a Fourth Amendment "seizure" had occurred, the *Brower* Court held that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, . . . but the detention or taking itself must be willful." *Id.* at 596 (citations omitted). The Court offered a hypothetical to illustrate a circumstance that would *not* give rise to a Fourth Amendment violation—that is, a parked, unoccupied police car that slips its brake and pins a passerby against a wall; in that circumstance, "it is likely that a tort has occurred, but not a violation of the Fourth Amendment." *Id.*

The Supreme Court explained that

> a Fourth Amendment seizure does not occur whenever there is a
> governmentally caused termination of an individual's freedom of
> movement (the innocent passerby), nor even whenever there is a
> governmentally caused and governmentally *desired* termination
> of an individual's freedom of movement ([if the passerby were a]

-7-

fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Id.* at 596–97. Significantly, the Court offered clarification of the necessary nexus between intention and the means applied:

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

*Id.* at 598–99. Furthermore, the Court's reasoning suggested that the intended instrumentality must in fact be capable under the circumstances of a given case of effectuating a seizure. In this regard, the Court offered another hypothetical:

> The pursuing police car sought to stop the suspect *only* by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Id.* at 597 (emphasis added); *see also id.* at 598 ("In marked contrast to a police car pursuing with flashing lights, or to a policeman in the road signaling an oncoming car to halt, a roadblock is not just a significant show of authority to

induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." (citation omitted)).

In sum, as we have articulated these principles after *Brower*, "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, *terminates or restrains his freedom of movement*, through means intentionally applied." *Brooks*, 614 F.3d at 1221 (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)) (internal quotation marks omitted).

**B**

**1**

Mr. Bleck argues that the district court misapplied *Brower* in concluding that there was no seizure that triggered Fourth Amendment protection. However, "[w]e have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011); *see SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason." (citation omitted) (internal quotation marks omitted)); *Wells v. City & Cnty. of Denver*, 257 F.3d 1132, 1149–50 (10th Cir. 2001). Here, "we decline to consider

whether the district court erred in concluding no constitutional violation occurred and instead opt to address whether the rights at issue were clearly established at the time of the alleged violation." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). We feel particularly comfortable doing this because Defendants raised their qualified-immunity argument before the district court—although the court did not reach it—and in their briefing before us as well. And, Mr. Bleck has had an opportunity at each stage of the litigation to respond.

We ultimately conclude that, even assuming that Officer Martinez's conduct amounted to a seizure of Mr. Bleck under the Fourth Amendment (based on the current state of the law), that legal outcome would not have been forecasted by clearly established law at the time. Consequently, Officer Martinez is entitled to qualified immunity. And, on this basis, we uphold the district court's judgment as to him.

**2**

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283–84 (10th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. at 236) (internal quotation marks omitted). "In other words, a civil rights defendant is entitled to

-10-

*fair warning* that his conduct deprived his victim of a constitutional right." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)) (internal quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision *on point*, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) (emphasis added) (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006)) (internal quotation marks omitted).

**3**

At the outset, we stress that we are obliged to accept Mr. Bleck's version of the facts, insofar as that version finds support in the record. In this regard, the record indicates that Officer Martinez intended to have his gun in his hand when he went hands on with Mr. Bleck, and that he elected to restrain Mr. Bleck with both hands simultaneously, with his right hand holding the gun. Aplt. App. at 348 (Dep. of Jeffrey Martinez, taken Dec. 14, 2011) ("Q: And you voluntarily kept your gun out when you headed towards Mr. Bleck, correct? A: Yes."). Furthermore, the record supports the view that Mr. Bleck was not restrained solely by Officer Martinez going hands on. In particular, Officer Martinez testified that he was still attempting to gain control of Mr. Bleck when his gun

discharged. *See id.* at 91 (Martinez Aff., filed Aug. 15, 2011) ("As I came within reach of [Steven] Bleck, I attempted to take control of him . . . . As I attempted to gain control of [Steven] Bleck, I still had my duty weapon drawn and in my right hand. As I was attempting to take control of [Steven] Bleck, I heard a muffled sound which I did not immediately but did later realize was a gunshot from the discharge of my duty weapon."). Had Officer Martinez's going hands on successfully terminated or restrained Mr. Bleck's freedom of movement, a seizure would have occurred for purposes of the Fourth Amendment, regardless of any role that Officer Martinez's gun played in the incident.

Under Mr. Bleck's version of the facts, as we see it, Officer Martinez employed the hands-on technique and the gun in tandem—*viz.*, the hands-on technique and the gun were jointly the instrumentality intentionally applied to terminate or restrain Mr. Bleck's freedom of movement, such that it was their joint application that was set in motion to effectuate what we are assuming was a Fourth Amendment seizure of Mr. Bleck. *See* Aplt. Opening Br. at 10 (arguing that "the presence of the gun in restraining Mr. Bleck's freedom of movement was not unintentional," and thus the seizure—namely, the shot to his hip—was achieved by means intentionally applied); *id.* at 20 ("Officer Martinez intended to go hands on to exert control over Mr. Bleck with his gun in his hand.").

Recall that, because Officer Martinez has asserted qualified immunity, Mr. Bleck bears the burden at summary judgment of showing, *inter alia*, that Officer Martinez violated a constitutional right that was clearly established at the time of the alleged conduct. *See Martinez*, 563 F.3d at 1088; *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). This, we conclude, he cannot do.

Mr. Bleck contends that *Brower* makes "clear that a seizure can occur where a gun is used as part of a seizure even though there is no intent to actually *shoot* a suspect to stop/seize him or her." Aplt. Reply Br. at 13. Therefore, says Mr. Bleck, "a reasonable officer in Officer Martinez's shoes would understand that if he or she intends to and actually uses a gun while terminating a person's freedom of movement or taking a person into custody, a Fourth Amendment seizure can result." *Id.* at 14.

Mr. Bleck's *Brower* argument is ultimately unpersuasive. In *Brower*, the Court observed, in the abstract, that the accidental discharge of a gun could nonetheless result in a seizure even if one meant only to bludgeon with the gun, *see Brower*, 489 U.S. at 598–99, and it is true that here there was an accidental discharge of a gun. However, the *Brower* Court made the gun-related observation in the context of a short hypothetical that was not rooted in the facts before it—a set of facts that actually bears no resemblance to those in Mr. Bleck's case. In other words, *Brower*'s holding was not the product of a factually analogous

-13-

setting. To be sure, we have observed that "we are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *United States v. Serawop*, 505 F.3d 1112, 1122 (10th Cir. 2007) (citation omitted) (internal quotation marks omitted). However, we are not convinced that the *Brower* gun hypothetical would have been sufficient to give a reasonable officer fair warning that the conduct at issue here could effect a Fourth Amendment violation.

Notably, the role of the gun in the *Brower* hypothetical was different. In *Brower*, the gun was the sole tool through which the seizure was intended to be effected. In other words, the actor in *Brower* intended to stop the victim *solely* through use of the gun. However, under Mr. Bleck's version of the facts, the most that could be said is that the gun was intended to operate as a show of authority in tandem with the hands-on technique in effecting the seizure. Thus, the factual circumstances of *Brower* are distinguishable. Moreover, viewed from a more nuanced perspective, in *Brower*'s gun hypothetical, the gun was intentionally employed in a manner that, *standing alone*, was actually capable of effectuating a seizure—a direct application of force through bludgeoning of the victim. In contrast, the gun was not used here in a manner calculated, *without more*, to effectuate a seizure—it was employed as a show of authority, like the chasing police car in the hypothetical offered by *Brower* as a counterpoint (i.e., as an instance when a seizure would not be found). *See Brower*, 489 U.S. at 597

-14-

("The pursuing police car sought to stop the suspect *only* by the show of authority represented by flashing lights and continuing pursuit . . . ." (emphasis added)). It was only when the gun was employed simultaneously (that is, in tandem) with the hands-on technique that it was capable in this case of effectuating a seizure. In other words, it was the gun in combination with the hands-on technique that constituted the instrumentality that was intentionally applied to effect a seizure, not the gun alone.

This analysis leads us to the conclusion that *Brower*, and in particular, its gun hypothetical, could not have provided adequate notice to Officer Martinez of the assumed unlawfulness of his conduct. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." *Hope*, 536 U.S. at 739; *accord Creighton*, 483 U.S. at 640; *see Schwartz*, 702 F.3d at 588. However, we are not persuaded that *Brower* would have been sufficient authority to make clear to a reasonable officer in Officer Martinez's shoes that his conduct would be unlawful—more specifically, that his conduct could effect an illegal seizure and violate the Fourth Amendment. *See Ashcroft v. al-Kidd*, --- U.S. ----, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*. The constitutional question in this case falls far short of that threshold." (emphasis added) (citations omitted)). Furthermore, Mr. Bleck has cited no cases—nor have we been able to

-15-

locate any—where a court, in ruling on a fact pattern like the one at issue here, has found a Fourth Amendment violation.

In sum, viewed objectively, we do not believe that it would have been clear and beyond debate to Officer Martinez that, when he elected to keep his gun in his hand as a show of authority, he could be found to have *intentionally* effected a Fourth Amendment seizure of Mr. Bleck when the gun *accidentally* discharged. Accordingly, we conclude that Officer Martinez cannot be found to have violated clearly established law and is entitled to qualified immunity.

## C

We now turn to Mr. Bleck's inadequate-training/supervision claim against Alamosa. Specifically, Mr. Bleck claims that Alamosa failed to adequately train or supervise its officers concerning the use of force in situations involving mentally ill individuals. While Officer Martinez may avail himself of a qualified immunity defense, Alamosa may not. *See Becker*, 709 F.3d at 1022 ("While Officer Bateman is entitled to assert the qualified immunity defense, the City is not."); *see also Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009) ("Qualified immunity . . . is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities.").

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Becker*, 709 F.3d at 1025 (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998)) (internal quotation marks omitted). Our summary of the analytical posture in *Becker* can be neatly repackaged for our purposes here:

> The district court disposed of [Mr. Bleck's] claim against both Officer [Martinez] and [Alamosa] based on its conclusion that Officer [Martinez] did not violate [Mr. Bleck's] constitutional rights. While it was unnecessary to review that conclusion in reviewing the district court's grant of summary judgment to Officer [Martinez], it is necessary to review that conclusion with respect to [Alamosa].

*Becker*, 709 F.3d at 1025. As a consequence, we must determine whether the district court properly granted summary judgment as a matter of law to Alamosa. We conclude that it did not. More specifically, in our view, the district court committed a legal error in assessing the role that Officer Martinez's gun could play in his intentional efforts to restrain Mr. Bleck's freedom of movement. This legal error led the district court to misconstrue the operative facts and to erroneously conclude that Officer Martinez did not effectuate a Fourth Amendment seizure of Mr. Bleck. Because he could not establish a seizure, reasoned the court, Mr. Bleck's constitutional claim must fail—which in turn

doomed his claim against Alamosa. For the reasons explicated below, we cannot uphold that result.

Turning to the district court's legal error, after surveying a number of cases that it admitted did not "reflect[] precisely the facts of this case," the court concluded that "[a] Fourth Amendment seizure may be found only where there is evidence suggesting that the officer's decision to fire his weapon was volitional." Aplt. App. at 945. Yet, the court's reasoning in this regard runs directly contrary to the gun hypothetical in *Brower*, in which the victim would have been seized if "stopped by the *accidental* discharge of a gun with which he was meant only to be bludgeoned," so long as the gun was "the very instrumentality set in motion or put in place" in order to effect a seizure. 489 U.S. at 599 (emphasis added). In other words, there is simply no requirement that Officer Martinez had to intend to *fire* the gun in order to effect a Fourth Amendment seizure under *Brower*. As such, the district court's reasoning is legally infirm.

Viewing the facts through this legally distorted lens, the district court failed to recognize that the gun—even if not volitionally fired—could play a significant role in the intentional efforts of Officer Martinez to restrain Mr. Bleck's freedom of movement. Indeed, it was the court's distorted view that ultimately led it to the conclusion that this case was ripe for summary judgment: "The issue might be inappropriate for summary resolution if the evidence

-18-

suggested any genuine issue of material fact about whether Officer Martinez *intentionally fired* his weapon.  Yet even plaintiff's own experts admit there is no evidence suggesting that the shooting was attributable to anything other than an accidental discharge." Aplt. App. at 944 (emphasis added).

More specifically, the district court found that "there is no genuine issue of material fact to suggest other than that Officer Martinez's intention was to seize [Mr. Bleck] by going hands on and pushing him to the bed or the floor.  The instrumentality, therefore, was the hands on technique." *Id.* at 942.  The court further reasoned, "Although undoubtedly the gun was intended as a show of the officer's authority, it was not the instrumentality by which Officer Martinez intended to effectuate the seizure itself." *Id.*  In other words, in the district court's view, Officer Martinez's use of the gun was "incidental" to the intentional hands-on technique—*viz.*, "[t]he means intentionally applied was the use of hands on, not the gun." *Id.* at 943.  Put another way, under the district court's reading of the record, the sole instrumentality intentionally employed to effectuate the seizure was the hands-on technique; so, when the gun discharged the bullet, the resulting stop of Mr. Bleck was not the product of intention and, consequently, it was of no Fourth Amendment significance.

As noted, Mr. Bleck's version of the facts is to the contrary.  In a nutshell, under his view, Officer Martinez intended to have the gun in his hand when he

went hands on with Mr. Bleck, *see id.* at 348, and because "the presence of the gun in restraining Mr. Bleck's freedom of movement was not unintentional," Aplt. Opening Br. at 10, the seizure was intentionally accomplished through the tandem action of the hands-on technique and the display of the gun. In other words, under Mr. Bleck's view, "the instant case is *not* an *accidental shooting* case," Aplt. Reply Br. at 3: Officer Martinez's use of the gun in a show of authority was *part of* the instrumentality intentionally applied to effectuate a restraint of Mr. Bleck's freedom of movement. And this two-pronged approach in fact succeeded in intentionally restraining Mr. Bleck (i.e., seizing him), albeit through accidental means (i.e., the gun's discharge).

As we see it, the district court's divergent view of the facts does not suggest the presence of a genuine dispute of material fact because it is predicated on a legal error. *Cf. Pahls v. Thomas*, 718 F.3d 1210, 1232 (10th Cir. 2013) ("[I]f the district court commits *legal* error en route to a *factual* determination, that determination is thereby deprived of any special solicitude it might otherwise be owed on appeal."). As noted, this error rendered Officer Martinez's use of the gun—as a matter of law—incidental to the instrumentality that he intentionally applied to effect a stop of Mr. Bleck. However, if we assess the facts free from the influence of this legal error, in our view, it is undisputed that the gun was part of Officer Martinez's instrumentality.

This is so, even when we construe the facts in the light most favorable to Alamosa. We are unaware of any evidence in the record to contradict the assessment that Officer Martinez intentionally employed his weapon (through displaying it in a show of authority), while simultaneously intentionally applying the hands-on technique—both with the goal of effecting a stop of Mr. Bleck. Indeed, even the district court did not question that "undoubtedly the gun was intended as a show of the officer's authority," Aplt. App. at 942, but the court deemed this fact to be legally irrelevant because Officer Martinez did not intend to discharge the bullet that struck Mr. Bleck from the gun. As we have demonstrated, the court's reasoning regarding this point is legally infirm.

Accordingly, we believe that there is no genuine factual dispute concerning the issue of seizure *vel non*. That is, as we see it, the evidence undisputedly demonstrates that Officer Martinez intentionally accomplished the termination of Mr. Bleck's freedom of movement through the tandem action of the hands-on technique *and* the display of his gun. And, because this is true under any view of the facts—even the view most favorable to Alamosa—we are situated not only to reverse the district court's judgment in favor of Alamosa on the seizure issue, but also to rule on that issue in Mr. Bleck's favor as a matter of law. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, --- F.3d ----, 2013 WL 5434809, at *1 (10th Cir. 2013) ("[W]e reverse the district court's grant of summary judgment to the EEOC. Abercrombie is entitled to summary judgment as a matter of law because

-21-

there is no genuine dispute of material fact . . . .").  In other words, as a legal

matter, Mr. Bleck prevails on the seizure issue with regard to his attempt to

impose municipal liability on Alamosa.

That does not end the constitutional analysis, however.  Then, the "pivotal

question," *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999), becomes whether

the seizure was reasonable.  *See, e.g.*, *Childress v. City of Arapaho*, 210 F.3d

1154, 1156 (10th Cir. 2000) ("To state a claim under the Fourth Amendment,

plaintiffs must show both that a 'seizure' occurred and that the seizure was

'unreasonable.'" (quoting *Brower*, 489 U.S. at 599)).  In answering that question,

the facts must be assessed through a different prism.  As the Supreme Court noted

in *Scott*:

> The only question in *Brower* was whether a police roadblock
> constituted a *seizure* under the Fourth Amendment.  In deciding
> that question, the relative culpability of the parties is, of course,
> irrelevant . . . .  Culpability *is* relevant, however, to the
> *reasonableness* of the seizure—to whether preventing possible
> harm to the innocent justifies exposing to possible harm the
> person threatening them.

550 U.S. at 384 n.10 (citations omitted); *see also Brower*, 489 U.S. at 599 ("This

is not to say that the precise character of the roadblock is irrelevant to further

issues in this case.  'Seizure' alone is not enough for § 1983 liability; the seizure

must be 'unreasonable.'  Petitioners can claim the right to recover for Brower's

death only because the unreasonableness they allege consists precisely of setting

-22-

up the roadblock in such manner as to be likely to kill him."). Because the district court here failed to recognize how the facts could be construed in the light most favorable to Mr. Bleck to reflect a significant role for the gun in the intentional efforts of Officer Martinez to restrain him, the district court concluded that there was no seizure; it therefore had no occasion to consider the distinct question of whether any such seizure should be deemed reasonable.

Even though the reasonableness of a seizure in an excessive-force case is partially a legal question, *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1254 (10th Cir. 2013) (noting "the mixed factual-legal inquiry in deciding whether the force used was reasonable"), we believe that prudence counsels against reaching this question in the first instance. Indeed, even as to a purely legal question, we benefit in many instances from giving the district court the opportunity to consider it first. *See Cent. Hudson Gas & Elec. Corp. v. EPA*, 587 F.2d 549, 557 (2d Cir. 1978) ("The benefits which result from a system in which issues of law are resolved first by a district court and then by the Courts of Appeals are well known particularly to the judges on the Courts of Appeals. Whether or not the Court of Appeals agrees with a decision rendered by a district court in any given case, it is invariably true that the primary review of the case by the lower court is of invaluable assistance."); *cf. Weise v. Casper*, 507 F.3d 1260, 1268 n.1 (10th Cir. 2007) (McConnell, J., dissenting) ("[B]ecause the district court addressed only the issue of whether the defendants, as private individuals, are entitled to

-23-

invoke the protections of qualified immunity, the proper course is for this court to remand and allow the district court to sort through the merits issues in the first instance.").  Moreover, even if the district court were to conclude here that Officer Martinez's seizure was unreasonable, that would not mark the end of the road for Mr. Bleck in his efforts to impose municipal liability on Alamosa.  There would be—as reflected in our instructions below—additional questions to answer.  Accordingly, we consider the better course here to be a remand to the district court for further proceedings.

Specifically, on remand, the district court should initially determine whether there are any genuine disputes of material fact concerning whether Officer Martinez's seizure of Mr. Bleck was unreasonable and whether Mr. Bleck is entitled to judgment on this question as a matter of law—*viz.*, whether Mr. Bleck has established as a legal matter that Officer Martinez violated his Fourth Amendment rights by effecting an unreasonable seizure.  If so, then "the district court must determine whether [Mr. Bleck] can withstand summary judgment as to the second element of his municipal liability claim," *Becker*, 709 F.3d at 1027—regarding the existence of "a municipal policy or custom [that] was the moving force behind the constitutional deprivation," *Myers*, 151 F.3d at 1316.

**IV**

For the foregoing reasons, we **AFFIRM** on the grounds of qualified immunity the district court's summary-judgment ruling with respect to Officer Martinez, and we **REVERSE** the district court's summary-judgment ruling with respect to Alamosa and **REMAND** for further proceedings consistent with this order.

Entered for the Court

JEROME A. HOLMES
Circuit Judge