**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

THE ESTATE OF STEVEN W.
BLECK, by Joanna Churchill,
Personal Representative for Steven
Bleck, deceased,

     Plaintiff - Appellant,

v.

CITY OF ALAMOSA, COLORADO,

     Defendant - Appellee.

No. 15-1200
(D.C. No. 1:10-CV-03177-REB-KMT)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **MURPHY**, and **McHUGH**, Circuit Judges.

Steven Bleck's mental health counselor was so worried he contacted 911
for help. The counselor relayed to dispatchers that he'd just received a
distressing call from Mr. Bleck — and that Mr. Bleck, a Vietnam War veteran,
was reexperiencing trauma, intoxicated, suicidal, possibly armed, and holed up in
a hotel room. Dispatchers quickly sent four Alamosa police officers to see what
they could do to help. When the officers arrived at the hotel, they called the

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

counselor and learned that Mr. Bleck was now threatening to "blow his head off" and had cut off communications. In light of this information and in an attempt to prevent him from committing suicide, the officers decided to enter Mr. Bleck's hotel room without announcing themselves. At the same time and to protect themselves, the officers decided to enter with their guns drawn. As the officers carried out their plan and made their way into the room, they saw Mr. Bleck seated on a bed, facing away from the door. One officer, Jeff Martinez, ordered Mr. Bleck to show his hands and lie on the floor. When Mr. Bleck didn't comply, Officer Martinez sought to subdue Mr. Bleck by pushing him down onto the bed. But Officer Martinez failed to reholster his gun first and, during the encounter, his gun accidentally discharged, shooting Mr. Bleck in the hip.

Some time later Mr. Bleck responded by filing suit seeking damages from the City of Alamosa. Though the history of the case is by now long enough (so long it is now pursued by Mr. Bleck's estate, for he passed away during its pendency, *see generally Estate of Bleck ex rel. Churchill v. City of Alamosa*, 540 F. App'x 866 (10th Cir. 2013)), at this point the points for decision are few. In fact, in the district court's estimation the estate's complaints boil down to an allegation that the city's officers employed constitutionally excessive force twice. First, when they chose to enter the hotel room with their guns drawn. Second, when Officer Martinez tackled Mr. Bleck without first reholstering his gun. And because these actions were allegedly the product of poor training, the estate

contends, responsibility for damages should fall not on the officers but on the city itself.

Ultimately, the district court found the estate's case unpersuasive. It held that neither of the estate's theories could satisfy the rigorous standards for municipal liability and it granted Alamosa's motion for summary judgment. Now on appeal, the estate doesn't dispute that the district court properly characterized its two central complaints, but it does dispute whether the district court properly applied the law to the facts associated with each.

In order to establish municipal liability for its excessive force claims, the estate must show four things. It must prove that (1) an Alamosa employee violated Mr. Bleck's constitutional rights, (2) the constitutional violation arose under recurring circumstances officers usually face, (3) there is a direct causal link between allegedly inadequate training and the constitutional violation, and (4) the allegedly inadequate training demonstrates deliberate indifference on the part of the city toward persons with whom the police officers come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *see also Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000). The facts before us are undisputed, so the question is now, as it was before the district court, whether when taken in the light most favorable to the estate they might satisfy this test.

Like the district court before us, we don't believe they can. In our view, the estate's first argument — concerning the officers' decision to enter with their

guns drawn — fails on the first element as a matter of law. In measuring whether force qualifies as constitutionally excessive, the Supreme Court has directed us to examine the totality of the circumstances — including the amount of force employed, the severity of the suspect's crime, the threat the suspect posed to officers or others, and whether the suspect attempted to resist or flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Applying these factors, the estate emphasizes that the officers chose to enter the hotel room with their weapons drawn even though there was no indication that Mr. Bleck intended to flee or harm anyone but himself. We accept these facts and acknowledge they suggest less rather than more force might be appropriate. But neither can we ignore additional undisputed facts the city cites — facts showing that the officers reasonably believed that Mr. Bleck was intoxicated, volatile, and very possibly armed. And in light of this fuller appreciation of the facts it seems clear to us that the responding officers faced a great personal risk in attempting to help Mr. Bleck and were entitled to take reasonable steps to protect themselves, including the step of bringing their weapons to hand. *See Tennessee v. Garner*, 471 U.S. 1, 20 (1985) (noting that courts must account for "the practical difficulties of attempting to assess the suspect's dangerousness"). Indeed, though totality of the circumstances tests like *Graham*'s often don't yield many "hard-and-fast rules," we do have a good deal of precedent indicating that officers may unholster their weapons when they enter "potentially dangerous situation[s]" not unlike this one. *United States v. Merkley*,

- 4 -

988 F.2d 1062, 1064 (10th Cir. 1993); *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (finding that a "reasonable officer need not await the 'glint of steel' before taking self-protective action"); *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995) (finding that officers may draw their weapons when the situation is volatile and potentially dangerous to them).

The authority the estate cites does not compel a contrary conclusion. For example, in *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), we held a triable claim for excessive force existed when officers responding to a potential suicide saw the suspect sitting in his car in plain view with a gun in his hand and they chose to run toward the car screaming, then reached inside to try to grab the suspect's hands, and then deliberately shot the suspect as he began to struggle. Accepting that this much states a claim for constitutionally excessive force, we do not see how it necessarily and logically entails with it the conclusion that (or really even speaks to the question whether) officers must keep their weapons holstered when opening a hotel door to address a volatile, intoxicated, and possibly armed suicide suspect. The two situations seem to us more notable for their differences than their commonalities. The estate's remaining circuit authority is both unpublished (so not controlling) and similarly distinguishable. *See, e.g.*, *Hastings v. Barnes*, 252 F. App'x 197 (10th Cir. 2007) (suggesting that

aggressively confronting and pepper spraying a potentially suicidal man who was not aggressive and was attempting to retreat constitutes excessive force).

Separately, of course, the estate contends that Officer Martinez engaged in excessive force when he tackled Mr. Bleck without first reholstering his weapon. But this separate argument faces a separate problem of its own. Even if we assume that the officer's conduct here *does* amount to constitutionally excessive force, there's no indication in the record it was the product of faulty training. Much to the contrary and as the estate itself emphasizes, Officer Martinez *violated* his training by failing to reholster his weapon before he physically engaged Mr. Bleck. So there's just no way to attribute any unconstitutional conduct by the officer to the city and the estate's claim fails under the third element of the *City of Canton* test for municipal liability. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("Plaintiffs who seek to impose liability on local governments . . . must prove that action pursuant to official municipal policy caused their injury.") (internal quotation marks omitted).

Affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge